WILSON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 3, 1908.

1. **COMMON CARRIERS: Failure to Deliver.** Hogs were received by a railroad company, for shipment under a contract to deliver them to a connecting carrier at the terminus of the carrier's line. When unloaded at that point they could not be reloaded for shipment on the connecting carrier's line on account of quarantine, but were sold there. If in such sale less was realized on them than would have been realized had they been shipped to proper destination, the shipper was damaged by the carrier's breach of contract, though the purchaser to whom the hogs were to be shipped claimed no damage for failure to make the delivery.

2. ————: ————: **Measure of Damages: Special Contract.** In an action in such case for the non-delivery of the hogs at destination, the measure of plaintiff's damages was the difference between what he realized from the sale of the hogs and the reasonable value of the hogs at destination.

3. ————: ————: ————: **Market Value.** The value at destination in such case is the market value when the property has such market value, out if it has no regular market value, evidence may be introduced to show what the reasonable value is.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*L. F. Parker* and *W. J. Orr* for appellant.

A shipper, for loss or misshipment of goods, can only recover the market value at the place of destination; and this is the rule even if the shipper had contracted to sell them at a special price above the market value, unless the carrier had notice at the time of shipment of the special price and purpose for which the shipment was made. And the plaintiff must plead and prove this notice. Rogan v. Railroad, 51 Mo. App. 665; Gray v. Railroad, 54 Mo. App. 671; Denning v. Railroad, 48 N. H. 455; Railroad v. Cole (Texas), 16 S. W. 176; Murrell v. Express Co., 54 Ark. 22; Railroad v. Flourney, 75 Ga. 745; Horne v. Railroad, 21 Mich. 481; Railroad v. Mudford, 48 Ark. 509; Crutcher v. Railroad (Ark.), 85 S. W. 770; Central Trust Co. v. Railroad, 69 Fed. 683; Railroad v. Cobb, 64 Ill. 128; Harvey v. Railroad, 124 Mass. 121; Railroad v. Belcher (Texas), 35 S. W. 6; Swift River Co. v. Railroad, 169 Mass. 326; Railroad v. Lynch, 12 Ill. App. 365; Railroad v. Johnson (Tenn.), 94 S. W. 600; Wehman v. Railroad (S. C.), 54 S. E. 360; Lee Co. v. Railroad (N. C.), 48 S. E. 809; Hutchison on Carriers, sec. 772.

*N. B. Wilkinson* for respondent.

That the value of this car of hogs could be shown by proof other than market quotations of this sale. McGraw v. O'Neill, 123 Mo. App. 701; Lechner Bros. v. Express Co., 72 Mo. App. 13. This last case discusses very thoroughly the difference between actual value and "market value," and determines the rule for fixing the damages in the case at bar. Defendant was bound to deliver car of hogs to connecting line. Cash v. Railroad, 81 Mo. App. 109.

GOODE, J.—This plaintiff's petition contained two causes of action, but we are only concerned with one.

He alleged that in January, 1906, he loaded at Willow Springs, Missouri, on a car of the defendant company, a cargo of hogs destined for St. Joseph, Missouri, which defendant contracted to carry to said city and deliver to the Lee Live Stock Commission Company; that instead of doing so defendant carried the hogs to Kansas City and unloaded them there and in consequence of such unlawful shipment plaintiff was damaged in the sum of $150; that the said cargo of hogs was purchased especially for the order of the Lee Live Stock Commission Company of St. Joseph, Missouri. The case commenced before a justice of the peace and we find no answer in the record. The evidence shows plaintiff shipped one hundred and thirty-five hogs from Willow Springs, consigned to the Lee Live Stock Commission Company at St. Joseph, Missouri. The bill of lading issued by defendant bound it to carry the hogs to Kansas City and there turn them over to a connecting carrier to be hauled to destination. Instead of this being done, the hogs were unloaded at Kansas City and never delivered to a connecting carrier. A stock quarantine was in force against Kansas City at the time, and in consequence of this the hogs could not be moved after they were unloaded and were sold for what they would bring, entailing a loss on plaintiff as alleged. The Lee Live Stock Commission Company had contracted to sell the hogs to some buyer near St. Joseph, but as they were stopped by defendant at Kansas City this contract could not be carried out. The hogs were not ready for slaughter, but were intended to be fattened before they were put on the market—were known as stock hogs, or feeders. The party who had agreed to purchase them intended to fatten them for the market. The undisputed evidence showed the hogs had no market value. Plaintiff testified to this and he was the only witness who gave any testimony on the subject. At the conclusion of the evidence defendant requested a declara-

tion that plaintiff was not entitled to recover more than nominal damages, and the refusal of this declaration is the main assignment of error.

Before taking up this assignment we will notice the minor contention that plaintiff lost nothing by the sale of the hogs at Kansas City, as the evidence goes to show that not he, but the commission company which had contracted for the sale of them stood the loss; that is, lost the commission which would have been earned. It was shown the prospective buyer agreed not to claim damages because of the non-delivery of the hogs, but how this proves that, not plaintiff but the commission company, sustained the loss consequent on defendant's failure to perform the contract to deliver them to a connecting carrier to be hauled to destination, we are unable to discern. Plaintiff was damaged by the breach of the contract unless he realized as much by the sale in Kansas City as he would have realized by the expected sale in St. Joseph. He might not be permitted to recover this amount of loss on account of his having given no notice to defendant that the hogs were shipped pursuant to a contract of sale; a question we will discuss. Though plaintiff may not be able to recover his loss or his recovery may be restricted by the facts, it is certain he sustained a loss.

But the chief contention of counsel for defendant is that, as there was no evidence to show plaintiff notified defendant at the time of shipment the hogs were being sent forward to carry out a contract for the sale of them, plaintiff was not entitled to recover the difference between the price realized in Kansas City and what he would have obtained had the contract made by his agent, the commission company in St. Joseph, not been frustrated by defendant unloading the hogs at the former city. In other words, it is insisted this loss was in the nature of special damages and was not reasonably and naturally contemplated by plaintiff and

defendant as what defendant would be called on to pay in case of non-delivery of the property at destination, in consequence of a breach of the contract by defendant. This may be true. Defendant's counsel have cited us to many cases, some following and some going beyond the rule laid down in Hadley v. Baxendale, 9 Exch. 341, and we have read all of them. Interpreted most favorably for defendant, they hold a carrier who unreasonably delays the shipment of goods or fails to carry them as agreed, is not liable for any profit the shipper would have made by delivery of the goods at destination pursuant to a contract of sale existing at the date of the shipment, unless the carrier was then notified of the existence of the contract and that the goods were being shipped to fill it. [Rogan v. Railroad, 51 Mo. App. 665; Gray v. Railroad, 54 Mo. App. 671; Denning v. Railroad, 48 N. H. 455; Railway v. Cole, 16 S. W. (Tex.) 176; Murrell v. Express Company, 54 Ark. 22; Railway v. Flourney, 75 Ga. 745; Horne v. Railroad, L. R. 8 C. P. 131; Railway v. Mudford, 48 Ark. 509; Crutcher v. Railroad, 85 S. W. (Ark.) 770; Central Trust Co. v. Railroad, 69 Fed. 683; Railway v. Cobb, 64 Ill. 128; Harvey v. Railroad, 124 Mass. 421; Railway v. Johnson, 94 S. W. (Tenn.) 600; Wehman v. Railroad, 54 S. E. (S. C.) 360.] The rule in Hadley v. Baxendale has its uses and no doubt was rightly applied to the facts of the case wherein it was declared. Its propriety in a case like this is less obvious. It was not shown, nor, indeed, can it reasonably be inferred, that defendant would have handled the shipment differently if it had been notified of the contract to sell in St. Joseph. For aught that appears the hogs would have been diverted at Kansas City in any event, from their route. It has been held the rule in Hadley v. Baxendale affects the damages for breach of a contract of carriage, only when notice of the special purpose for which the goods were shipped would have expedited their

transportation or have influenced the carrier's action. [Railroad v. Cobb, 64 Ill. 128, 141.] And where there is no excuse for the carrier's failure to perform its contract, the theory of the case just cited is reasonable. Though the argument of defendant's counsel has led us into making these remarks, we decide nothing in connection with them, because the point before us does not call for a decision regarding the proper use of the doctrine of Hadley v. Baxendale. The error assigned is, as said, the refusal of the court to declare plaintiff could only recover nominal damages; not a refusal to declare he could not recover the difference between the price realized by the forced sale of the hogs in Kansas City and what he would have realized if they had been delivered to the buyer at St. Joseph. That plaintiff was only entitled to nominal damages if, in truth, he sustained and proved substantial damages, is a proposition not to be entertained. He may not be entitled to recover the difference between what he would have realized from the special contract of sale and what he actually received, but he certainly is entitled to the difference between what he realized and the reasonable value of the hogs in St. Joseph. Perhaps the contract under which he had sold them was more than their reasonable value, in which event possibly defendant is not liable for the excess. But in an action against a carrier for loss of freight or its non-delivery at destination, the measure of damages, in the absence of notice of a special contract between the shipper and the carrier, or of special facts which would entitle the shipper to extra damages, is the value of the property at destination, less the cost of carriage. [Atkisson v. The Castle Garden, 28 Mo. 124; Austin v. Packet Co., 15 Mo. App. 197.] The value at destination is the market value, when the goods have such a value. If they have no regular market value, evidence must be adduced to show what their reasonable value was. [Railroad v. Lynch, 12 Ill.

App. 365; 3 Hutchison, Carriers (M. & W. Ed.), sec. 1363.] All the testimony in the record goes to show hogs of this kind had no regular market value, but tends to show what their actual value was in St. Joseph and that it was more than the proceeds of the sale in Kansas City. The difference between the two plaintiff was undoubtedly entitled to recover on any theory of the case, and the rule in Hadley v. Baxendale does not stand in the way of his recovery. Hence there is no ground on which to rest the proposition that the court erred in refusing to declare he was only entitled to nominal damages.

The judgment is affirmed. All concur.